HOWELL et al., Appellants,

v.

BUCK CREEK STATE PARK, Appellee.

[Cite as *Howell v. Buck Creek State Park* (2001), 144 Ohio App.3d 227.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1270.

Decided June 26, 2001.

*R. Jack Clapp & Associates Co., L.P.A.,* and *Timothy A. Ita,* for appellants.

*Betty D. Montgomery,* Attorney General, *Karl W. Schedler* and *Monique Lampke,* Assistant Attorneys General, for appellee.

PEGGY BRYANT, Presiding Judge.

Plaintiffs-appellants, Pamela Howell, individually and on behalf of her minor children, Tenitia and James, Sidney Howell, Carmella Howell, Kevin Evans, Markeeta Evans, Alfred James, Carolyn Scofield, individually and on behalf of her minor children, Robert and Kiara, William Smith, Nanetta James, and Marvin T. Warren, individually and on behalf of his minor child Marvin Warren, Jr., appeal from a judgment of the Ohio Court of Claims granting the summary judgment motion of defendant-appellee, Buck Creek State Park.

On June 15, 1999, plaintiffs filed a complaint against defendant alleging premises liability arising out of defendant's negligence in maintaining a steel catwalk leading from the shore at Buck Creek State Park to wooden docks located at the marina on the east side of the reservoir situated in the park. Plaintiffs claimed that they sustained serious bodily injury, pain and suffering, and extreme emotional distress when the catwalk, without warning, violently collapsed, causing caused plaintiffs to fall into the reservoir located at the park.

Defendant responded with a motion to dismiss, contending that plaintiffs, as a matter of law, were recreational users of Buck Creek State Park. Citing R.C. 1533.181, defendant claimed that it owed plaintiffs no duty to keep the premises safe for entry or use. After the parties had fully briefed the motion, the trial court on December 9, 1999, overruled the motion, concluding that the court "is unable to determine beyond doubt that plaintiffs could prove no set of facts entitling them to recovery."

Following additional discovery, defendant filed a motion for summary judgment on July 24, 2000. After plaintiffs' response to the motion, the trial court on October 4, 2000, filed an entry granting defendant's summary judgment motion, concluding that plaintiffs' status at the marina on the day of the incident was that of recreational users under R.C. 1533.18. Accordingly, pursuant to R.C. 1533.181, the court concluded that defendant was immune from liability to plaintiffs. Plaintiffs appeal, assigning two errors:

"I. The Court of Claims erred in granting defendant's motion for summary judgment on plaintiffs' negligence claims when it found as a matter of law that appellants-plaintiffs' status at the marina on June 16, 1997, were [*sic*] that of recreational users pursuant to R.C. § 1533.181 and that appellee–defendant was immune from liability to plaintiffs.

"II. The Court of Claims erred in not addressing appellants–plaintiffs' claim that the recreational user statute is overly broad and unconstitutional as applied to appellants–plaintiffs' claims."

■ Plaintiffs' first assignment of error asserts that the trial court erred in concluding that they were recreational users of the marina's facilities. The facts underlying the trial court's application of the recreational user statute are undisputed. Plaintiffs arrived at Buck Creek State Park on the afternoon of June 14, 1997, and rented two cabins at the park for the nights of June 14 and 15. The fourteen guests in the party were placed in the two rental cabins, and all fourteen contributed to the cost of those cabins. On the morning of June 16, plaintiffs packed their belongings in anticipation of checkout, and at approximately 10:00 a.m., two hours before checkout, they visited the marina for a group picture prior to their departure. When they crowded together onto the catwalk for the picture, the catwalk collapsed and they were thrown into the water. Defendant contends, and the trial court agreed, that defendant is immune from liability under R.C. 1533.18 and 1533.181, commonly referred to as the recreational user statute.

R.C. 1533.18(B) defines "recreational user" as:

"[A] person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits."

R.C. 1533.181 states:

"(A) No owner, lessee, or occupant of premises:

"(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

"(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."

"In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 537 N.E.2d 1294, paragraph one of the syllabus.

■ Pursuant to R.C. 1533.18(B), a recreational user has permission to enter upon the premises without payment of a fee or consideration. "Consideration should not be deemed given under R.C. 1533.18(B) unless it is a charge necessary to utilize the overall benefits of a recreational area so that it may be regarded as an entrance or admittance fee." *Moss v. Ohio Dept. of Natural Resources* (1980),

62 Ohio St.2d 138, 142, 16 O.O.3d 161, 164, 404 N.E.2d 742, 745. "Where a park is held open to the public, without fee, for recreational purposes, the recreational user statute will provide immunity." *Reed v. Miamisburg* (1993), 96 Ohio App.3d 268, 270, 644 N.E.2d 1094, 1095, citing *Miller, supra.*

In *Reed*, the plaintiffs were enjoying a family reunion at Mound Park when the incident occurred. The family had rented and paid for a shelter house at the park in order to ensure the availability of the shelter, but plaintiffs were not required to pay a fee in order to utilize the overall benefits of the park. As the court noted in *Reed*, "Mound Park offered more than a shelter house—it offered an Indian burial site, swings and other playground equipment, as well as other 'green space' the appellant could have used without providing any consideration. We must therefore conclude that the trial court appropriately applied the recreational user statute below, and that the appellee owed no duty to appellant as a matter of law." *Id.*

Similarly, here, plaintiffs were not required to pay a fee to enter Buck Creek State Park or to proceed to the marina. Rather, the only fees plaintiffs paid were to utilize the cabins at the park. Their use of the cabins, however, does not equate to the overall benefits of the park. See, also, *Wilson v. United States* (C.A.8, 1993), 989 F.2d 953 (finding that scouts who paid a fee to stay overnight at building 1614 in Fort Leonard Wood were recreational users where no fee would have been charged either to participate in the Youth Tour Program or to enter Fort Leonard Wood had the scouts not elected to stay overnight, rendering the fee a lodging fee rather than an entrance fee).

The dissenting opinion suggests that the present case is similar to *Huth v. State* (1980), 64 Ohio St.2d 143, 18 O.O.3d 370, 413 N.E.2d 1201, where the Ohio Supreme Court found that the plaintiff was not a recreational user. In *Huth*, the plaintiff and her husband paid a fee to Mohican State Park for the right to attach their trailer to an "electric hook-up" outlet. Plaintiff's husband was electrocuted while connecting the electric hook-up. Unlike *Huth*, plaintiffs here paid a fee for lodging but were injured while engaging in an activity wholly unrelated to that fee, an activity that was open to the public, including plaintiffs, without a fee. Plaintiffs were recreational users of the marina even if they may not have been recreational users of the cabins.

The dissenting opinion also relies on *Moss*, but that case supports the trial court's conclusion. In *Moss*, the plaintiffs purchased gas and food and rented a canoe at the parks. Noting that a recreational user is one who enters the premises without paying a fee, *Moss* concluded that plaintiffs and their decedent did not pay a fee to enter the parks and thus were recreational users. In passing, the court observed that *Moss* did not present a situation where "the state attempted to circumvent liability by charging fees for the use of all facilities,

in essence charging an entrance fee, although not labeling it as such." *Moss*, 62 Ohio St.2d at 142, 16 O.O.3d at 163, 404 N.E.2d at 745. Similarly, here defendant did not charge a fee for the cabins as a subterfuge for an entrance fee, as anyone could enter the park free of charge and use the marina, regardless of whether they rented a cabin. Neither the holding nor the rationale of *Moss* dictates a reversal of the Ohio Court of Claims in this case.

Finally, the dissent attempts to draw an analysis between the present facts and a Holiday Inn hotel. The dissent states that "[n]o one would seriously suggest that a Holiday Inn that provides a swimming pool should be immune from liability to swimmers merely because the Holiday Inn charges no separate fee for the use of the pool." Holiday Inn facilities, however, are not available without first paying the fee, which is "necessary to utilize the overall benefits" of the hotel, including the pool. The fee may fairly be "regarded as an entrance or admittance fee" to all the Holiday Inn facilities. *Moss, supra.* Unlike the dissent's hypothetical, renting a cabin is not "necessary to utilize the overall benefits" of Buck Creek State Park and therefore may not fairly be "regarded as an entrance or admittance fee." *Id.*

Given the foregoing, the trial court properly determined that defendant was immune from liability due to application of the recreational user statute. Accordingly, we overrule plaintiffs' first assignment of error.

Plaintiffs' second assignment of error contends that the trial court erred in failing to address their constitutional argument that the recreational user statute is unconstitutional as overly broad. Plaintiffs, however, failed to develop their contentions in the trial court. Having failed to adequately develop the merits of their argument in the trial court, they have failed to preserve the issue for appellate review. *Riedel v. Houser* (1992), 79 Ohio App.3d 546, 607 N.E.2d 894; *Howard v. Seidler* (1996), 116 Ohio App.3d 800, 689 N.E.2d 572 (finding a one-paragraph assertion in the trial court that a statute is unconstitutional does not preserve the issue on appeal). Accordingly, plaintiffs' second assignment of error is overruled.

Having overruled plaintiffs' two assignments of error, we affirm the judgment of the Ohio Court of Claims.

*Judgment affirmed.*

DESHLER, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

I respectfully dissent.

The legal question to be addressed is whether Buck Creek State Park or the Ohio Department of Natural Resources ("ODNR") is to some degree liable for the injuries sustained by the Howell family, the Scofield family, and others who stayed at the park overnight. ODNR asserts that no liability exists due to the operation of R.C. 1533.18 and 1533.181, commonly known as the Recreational User Statute.

R.C. 1533.18(B) defines "recreational user" as follows:

" 'Recreational user' means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits."

R.C. 1533.181 reads:

"(A) No owner, lessee, or occupant of premises:

"(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

"(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

"(B) Division (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals."

In construing and applying these statutes, we are guided by case law from the Supreme Court of Ohio. In *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 537 N.E.2d 1294, the Supreme Court directed in paragraph one of the syllabus:

"In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public. (*Light v. Ohio University* [1986], 28 Ohio St.3d 66, 28 OBR 165, 502 N.E.2d 611; *Loyer v. Buchholz* [1988], 38 Ohio St.3d 65, 526 N.E.2d 300; *Fryberger v. Lake Cable Recreation Assn., Inc.* [1988], 40 Ohio St.3d 349, 533 N.E.2d 738; *Sorrell v. Ohio Dept. of Natural Resources* [1988], 40 Ohio St.3d 141, 532 N.E.2d 722, construed.)"

In the *Miller* case, a softball player was injured while sliding into second base at the thirteenth national police softball tournament. The tournament was held in a Dayton city park, but no part of the entrance fee paid by softball teams went to the city. Further, the city was not a sponsor or an organizer of the tournament.

The difference between Kettering Field in Dayton and Buck Creek State Park is noticeable. Buck Creek State Park includes in its basic services the providing of cabins and other services for a fee. Money is paid directly to a government entity or its agents for use of the cabins and other services. The parties who were injured when the catwalk collapsed had all spent the two previous nights in rental cabins for which they had paid a fee or a fee had been paid on their behalf.

Further, in *Huth v. State* (1980), 64 Ohio St.2d 143, 18 O.O.3d 370, 413 N.E.2d 1201, the Supreme Court found that a husband and wife who had paid a fee to enter and use a trailer site at Mohican State Park were not recreational users under R.C. 1533.18(B). The Supreme Court distinguished the facts therein from the facts in *Moss v. Ohio Dept. of Natural Resources* (1980), 62 Ohio St.2d 138, 16 O.O.3d 161, 404 N.E.2d 742. In *Moss,* the Supreme Court found that the plaintiffs, in purchasing gas and food and in renting a canoe, had not paid a fee to enter the parks at issue and, therefore, were recreational users. However, in *Huth,* the plaintiffs had paid a fee to enter the trailer site and could not have brought the items they purchased or rented (the trailer and electrical hook-up) and still have made use of the park facilities. *Huth* at 145, 18 O.O.3d 370, 371–372, 413 N.E.2d 1201, 1202–1203. The Supreme Court concluded that the plaintiffs were not recreational users because they had paid an entrance or admittance fee. *Id.*

The same analysis can be applied to the facts in the case at bar. The plaintiffs here paid a fee to rent cabins at the park. Their purpose in being at the park was a family outing, planned in advance, which included the reserving of two cabins. The parties would not have been at the park but for the renting of the cabins. Obviously, the plaintiffs could not have brought the items they rented (the cabins) to the park. The plaintiffs clearly paid an admittance fee for use of the cabins. As such, they are not deemed recreational users under R.C. 1533.18(B).

Many of ODNR's parks offer a wide variety of services for food and lodging. Full service lodges are provided. Rental cabins are available. Golf courses that can be played for a fee are on the park grounds. Recreation is a big business, both as administered by ODNR and as administered by private entities.

No one would seriously suggest that a Holiday Inn that provides a swimming pool should be immune from liability to swimmers merely because the Holiday Inn charges no separate fee for the use of the pool. To the same extent, a state

park that provides the same array of services is not immune merely because it does not charge for some of the recreational activities it offers.

We note the words of R.C. 1533.181(B) that "[d]ivision (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises * * *." The Supreme Court of Ohio has construed division (B) to allow immunity for land owned by governmental entities. See *Sorrell v. Ohio Dept. of Natural Resources* (1988), 40 Ohio St.3d 141, 532 N.E.2d 722, and *Moss, supra.* However, the Supreme Court of Ohio has not extended its construction of R.C. 1533.181(B) to the point of rendering the phrase "nonresidential premises" meaningless. To the extent that state parks provide overnight lodging, they are residential premises.

The Howells, the Scofields, their families, and friends paid for lodging at Buck Creek State Park. They were still on the premises before the scheduled checkout time. Buck Creek State Park and ODNR accepted payment for the use of the lodging and thereby gave up the right to treat the families and friends as recreational users at least for the period of time for which the families and friends had paid for the use of the rental cabins.

Since the majority of this panel chooses to provide immunity for Buck Creek State Park and ODNR, I respectfully dissent.